UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

**SUZANNE S.,**

**Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL
SECURITY,**

**Defendant**.

Case No. 1:21-cv-00852-TPK

**OPINION AND ORDER**

<u>**OPINION AND ORDER**</u>

      Plaintiff filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security.  That final decision, issued by the Appeals Council on May 28, 2021, denied Plaintiff's application for disability insurance benefits. Plaintiff has now moved for judgment on the pleadings (Doc. 8) and the Commissioner has filed a similar motion (Doc. 11).  For the following reasons, the Court will **GRANT** Plaintiff's motion for judgment on the pleadings, **DENY** the Commissioner's motion, and **REMAND** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

### I.  BACKGROUND

      Plaintiff filed her application for benefits on February 26, 2019, alleging that she became disabled on December 31, 2014.  After initial administrative denials of that claim, a hearing was held before an Administrative Law Judge on October 16, 2020.  Plaintiff and a vocational expert, Michael Smith, testified at the last hearing.

      The Administrative Law Judge issued an unfavorable decision on November 25, 2020. He first found that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2014, and that she had not engaged in substantial gainful activity from her alleged onset date to the expiration of her insured status.  Next, the ALJ concluded that Plaintiff suffered from severe impairments including major depressive disorder, diverticulitis, and status post breast cancer.  However, the ALJ determined that these impairments, taken singly or in combination, did not meet the criteria for disability under the Listing of Impairments.

      Moving forward with the sequential evaluation process, the ALJ then concluded that Plaintiff had the ability to perform light work.  Additionally, he found that Plaintiff was limited to simple work, could adapt to routine workplace changes, and could frequently reach in all directions with her left upper extremity.

      The ALJ further concluded that Plaintiff could not perform her past relevant work as a

letter carrier.  However, relying on the vocational expert's testimony, the ALJ determined that, with the limitations described above, Plaintiff could perform light unskilled jobs such as cleaner housekeeper, photocopy machine operator, and officer helper.  He also found that these jobs existed in significant numbers in the national economy.  As a result, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.

Plaintiff, in her motion for judgment on the pleadings, raises this claim of error: "The Administrative Law Judge (ALJ) erred by relying on his own lay interpretation of the raw medical record to craft the residual functional capacity, and in the alternative, should have obtained medical opinion evidence."  *See* Plaintiff's memorandum, Doc. 8-1, at 1.

## II.  THE KEY EVIDENCE

### A.  Hearing Testimony

Plaintiff, who was 55 years old at the time of the administrative hearing, first testified that she had graduated from college and then trained in massage therapy.  She had done a little massage therapy work between 2014 and the date of the hearing.  Before 2014, she worked as a city letter carrier.  In 2007, she was diagnosed with breast cancer and took time off for treatment.  Her attempt to return to work created friction with her employer and she both developed some knee problems and ended up taking disability retirement.  She also developed some mental health issues and had occasionally sought emergency room treatment for panic attacks.  In 2013 and 2014, she could go a month with only one panic attack and then have several in one week.  Additionally, she experienced depressive symptoms on a frequent basis during that time.  Finally, Plaintiff testified that she has had problems with her left arm after having lymph nodes removed, and that impacted her ability to work as a massage therapist.

The vocational expert, Michael Smith, first testified that Plaintiff's past job as a letter carrier was semi-skilled and that she performed it at the light exertional level, while the massage therapist job was done at the medium exertional level.  He was then asked questions about a hypothetical person who had Plaintiff's vocational profile, who could work at the light exertional level, and who could carry out simple instructions and adapt to routine changes in the workplace.  The person also could reach frequently with the left upper extremity.  Mr. Smith said that such a person could not do Plaintiff's past work but could perform jobs like cleaner, photocopy machine operator, and office helper.  An employer would not tolerate someone being off task for more than ten percent of the time or missing two or more days of work per month, however.

### B.  Treatment Records

The pertinent medical treatment records (those created prior to December 31, 2014) are sparse in substantive content, but they show the following.  Plaintiff had reported depressive symptoms as early as 2009 as well as anxiety issues associated with losing her job.  She continued to receive treatment for those conditions throughout the relevant time period.  There is a treatment note from Dr. Whelpley, her psychiatrist, from May of 2014 indicating that she

reported decreased energy and interest, and he changed her medication at that time.  Most of the medical records, however, related to various physical complaints, many of which are not at issue here.

As noted above, Plaintiff underwent surgery in 2007 as treatment for breast cancer.  She developed lymphedema in her left arm shortly thereafter, and was diagnosed with diverticulosis in 2013.  Other abdominal issues included a diagnosis of ovarian fibroids in 2014 with associated abdominal bloating.  She also had hernia surgery well after the expiration of her insured status.  The contemporaneous treatment notes generally show that she was able to do usual activities, had good exercise tolerance, and had no fatigue or weakness.  *See, e.g.,* Tr. 412.  A later note indicated that her lymphedema was well-controlled with a compression sleeve, but it was interfering with her ability to do massage therapy.

### C.  Opinion Evidence

There is only one medical opinion in the record that actually addresses functional limitations, because all of the state agency reviewers concluded that there was insufficient evidence to evaluate Plaintiff's claim of disability prior to December 31, 2014.  Plaintiff's treating mental health professional, Dr. Whelpley, completed a medical source statement on October 28, 2020, indicating that she suffered from major depressive disorder and generalized anxiety disorder which had been treated by individual therapy and medication.  Her symptoms included depressed mood, low energy, and anxiety, all of which precluded her from being employed. Dr. Whelpley believed Plaintiff would have great difficulty completing a normal workday and work week without interruption from psychologically-based symptoms and to travel to unfamiliar places and use public transportation.  She also had a moderate impairment in the areas of understanding, remembering, and applying information and maintaining concentration, persistence, and pace.  Additionally, she would be off task for 30% of the time due to her conditions.  He said these limitations had been present since at least 2016.  (Tr. 1271-76).

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012).

## IV.  DISCUSSION

In arguing her sole claim of error, Plaintiff begins by noting that the ALJ crafted his physical residual functional capacity finding without relying on any opinion evidence, and relied only partially on opinion evidence when fashioning a mental residual functional capacity finding.  Plaintiff contends that he provided no explanation for concluding that she was capable of light work and that he should not have relied on his lay interpretation of the medical records, especially as it relates to her mental functioning.  Under these circumstances, Plaintiff asserts that the ALJ was required to develop the record further by obtaining additional opinion evidence.  In response, the Commissioner argues that the absence of more complete evidence concerning Plaintiff's limitations prior to her last insured date means that she did not satisfy her burden of proving disability, and also points out that an ALJ's residual functional capacity finding need not match precisely any of the medical opinions of record.

The Court begins its analysis with a detailed examination of the ALJ's reasoning process.  First, the ALJ concluded that Plaintiff's claim of a disabling physical condition was not entirely consistent with the evidence which showed that, prior to December, 2014, her physical impairments were limited to a successful double mastectomy in 2007, some intermittent swelling of her left arm, and some ovarian fibroids.  He did not believe this last conditions resulted "in more than minimal, if any, limitations on the claimant's ability to perform basic work activities." (Tr. 20).  Turning to her mental functioning, he agreed that the record showed that she had received treatment for depression and anxiety since 2009.  *Id*.  However, her daily activities and her ability to work as a massage therapist and to care for her grandchildren seemed to contradict her claim that she had a mental disability.  *Id*.

The ALJ next considered the medical evidence.  He noted that the record concerning physical impairments was limited to tests showing that she had diverticulosis and had abdominal pain resulting either from that condition or from her ovarian fibroids.  Consequently, he limited her to light work to account for these symptoms, and limited her use of the left arm due to her

lymphedema.  Looking at the treatment records relating to her mental health conditions, the ALJ noted that after reporting depressive symptoms in 2007 relating to her breast cancer diagnosis, Plaintiff reported great improvement the following year and stopped taking medications in anticipation of returning to work.  Her mental status examination in May of 2014 showed some abnormalities, however, but she did not require any hospitalization or emergency treatment.

Finally, the ALJ discussed the opinion evidence.  He found all of the state agency opinions unpersuasive because he believed that there was sufficient evidence to evaluate Plaintiff's functional limitations.  That evidence included later-submitted medical records as well as Plaintiff's testimony at the administrative hearing.  He then considered Dr. Whelpley's opinion, finding it "not fully persuasive" because the treatment records from the relevant time period did not support any extreme limitations and because her activities, including working as a massage therapist, were inconsistent with disabling psychological impairments.  Taking all of the evidence into account, the ALJ determined that Plaintiff was limited to light work with a reaching restriction and with additional mental limitations.  (Tr. 22).

The law in this area is relatively well-established.  As the Commissioner points out, under *Schillo v. Kijakazi*, 31 F. 4th 64, 78 (2d Cir. 2022) "the ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence."  This Court has said, however, "[w]hile in some circumstances, an ALJ may make an RFC finding without ... opinion evidence, the RFC assessment will be sufficient only when the record is 'clear' and contains 'some useful assessment of the claimant's limitations from a medical source.' " *Muhammad v. Colvin*, 2017 WL 4837583, at *4 (W.D.N.Y. Oct. 26, 2017) (internal citation omitted).  When that is not the case, the ALJ must supplement the record with additional medical evidence such as an assessment of a claimant's functional capacity from a treating source.  *See, e.g., Jackson v. Kijakazi*, 588 F.Supp.3d 558 (S.D.N.Y. 2022).

Applying these principles to this case, and beginning with the physical residual functional capacity finding, the evidence which the ALJ used to formulate his finding consisted of a very few records which predate December 31, 2014 - records which the state agency reviewers found insufficient to make a functional capacity finding - plus the subsequent treatment records and Plaintiff's testimony at the administrative hearing.  However, none of this evidence contains any assessment of Plaintiff's physical capabilities.  It is true that the combination of essentially normal physical findings both before and after December 31, 2014 could support the conclusion that Plaintiff had few, if any, physical limitations, but the ALJ determined, without any real explanation, that her conditions limited her to light work and, more significantly, that her status post breast cancer (which includes lymphedema) was both a severe impairment and that it limited her to only frequent reaching with her left arm.  The Court has painstakingly searched the record and can find nothing upon which the ALJ could have based that conclusion.  If it is the case that Plaintiff has a reaching limitation, because no medical source described the extent or nature of that limitation and the record does not otherwise provide any quantification of the problem - even Plaintiff's testimony is vague on this point, although she endorsed pain and swelling of her left arm when she tried to work as a massage therapist - the Court is forced to conclude that there is not substantial evidence to support the ALJ's conclusion

that Plaintiff could use her left arm frequently in the work context. To that extent, Plaintiff's first claim of error has merit.

As far as her mental functional capacity is concerned, however, there is an opinion in the record, and the ALJ relied on it to some extent, although he rejected the more extreme limitations expressed by Dr. Whelpley. Although Plaintiff accuses the ALJ of "cherry-picking" the opinion, adopting only those portions which support a finding of no disability, the Court disagrees with that analysis. The ALJ provided an explanation for why he did not accept certain portions of Dr. Whelpley's opinion, and the record contains support for his decision. Under those circumstances, the Court finds no error in the way in which the ALJ developed his mental residual functional capacity finding. Nevertheless, because of the lack of support for the ALJ's physical functional capacity finding, a remand is required.

## V.  CONCLUSION AND ORDER

For the reasons stated above, the Court **GRANTS** Plaintiff's motion for judgment on the pleadings (Doc. 8), **DENIES** the Commissioner's motion (Doc. 11), and **REMANDS** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

                                                                     **/s/ Terence P. Kemp**
                                                                     **United States Magistrate Judge**